# FRANK J. HOWELL v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 6, 1914.

Nos. 18,505—(316).

**Negligence — question for jury — variance.**

Plaintiff's intestate, a boy of the age of seven years and three months, was killed on a street crossing by being struck by a train of defendant. It is *held*:

(1) There was not a fatal variance between the allegations of negligence and the proof.

(2) The evidence was sufficient to warrant submitting to the jury the question of defendant's negligence.

(3) It did not conclusively appear that deceased was guilty of contribu·tory negligence.

Action in the district court for Pine county by the administrator of the estate of Henry J. Howell, deceased, to recover $3,200 for the death of the intestate, a child of seven years. The answer alleged that the intestate while a trespasser on defendant's railway track received injuries by being struck with one of defendant's locomotives then and there prudently, cautiously and lawfully operated, which ·injuries were solely and proximately caused by the recklessness and inattention to his own safety of the intestate and through the negligence of his father and of his parents, and denied that plaintiff had been injured by the death of the intestate. The case was tried before Stolberg, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,000 in favor of plaintiff. Defendant's motion for judgment notwithstanding the

[1] Reported in 145 N. W. 804.

Note.—The question of the care required of railroad companies to prevent injuring small children upon the track is treated in a note in 25 L.R.A. 784. And upon the question of the negligent operation of train at crossing as ground of liability for killing or injuring child incapable of contributory negligence, who was aware of train's approach, see note in 34 L.R.A.(N.S.) 645.

verdict was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

M. L. Countryman and J. A. Murphy, for appellant.

J. W. Reynolds, for respondent.

BUNN, J.

This action was brought to recover damages sustained by reason of the death of Henry J. Howell, alleged to have been caused by the wrongful act of defendant. The case was submitted to the jury and a verdict of $1,000 for plaintiff returned. Defendant moved for judgment notwithstanding the verdict, but not for a new trial. The motion was denied, and judgment was entered on the verdict. From this judgment defendant appeals.

The assignments of error present but one ultimate question for our decision, and that is whether the evidence made a case for the jury. The facts are as follows:

Defendant's main line between St. Paul and Duluth crosses Second street in the village of Hinckley at right angles, the track running north and south and the street east and west. The station is less than a block south of the crossing, and the track north of the crossing is practically straight for about two miles. The village is mainly west of the track and station, while the territory to the east is largely a farming territory. A country road runs from the east and merges into Second street at a point near the track. Henry Howell lived with his parents on a farm two and one-half miles east of Hinckley. He had attended school in the village for about a year prior to the day of the accident, at which time he was seven years and three months old. In going to and from school he traveled along the country road and Second street. The school house was a block and a half west of the track. On the morning of May 17, 1912, Henry, with two companions, one of about his own age and the other 12 years old, was on his way from his home to school. When the boys reached the crossing, they stopped to play. Other school children were approaching the crossing from the east, and others were between the track and the school. At this time a passenger train from the north was seen approaching the crossing nearly two miles away. The

boys saw the train, but continued to play, throwing stones, some-times standing on or near the track, and then running back and forth across it as the train approached. It did not appear that Henry took part in this game of running back and forth across the track. When the engine came quite close to the crossing, the boys were on the east side of the track. The two companions of Henry crossed to the west side; Henry was behind them and near the east rail, and then attempted to run to the west side where the other boys were. He hesitated, the engine was upon him and struck him before he could get across. He died a month later from the injuries received.

The general charge of negligence made in the complaint was that the defendant "so carelessly, negligently and wantonly" operated a train of cars over the street crossing that it struck the boy while he was on the track. As specifications of this general charge it was alleged that the engineer and fireman saw the boy and appreciated his danger in time for them to have stopped the train and to have avoided injuring him, but that instead of stopping the train, or giving warning of its approach, they continued to run the train at a "high, dangerous, uncontrollable and negligent rate of speed," and "negligently, wrongfully and unlawfully gave neither signal nor warning by bell, whistle or otherwise, of the approach of said train toward said crossing or of danger to decedent."

Defendant urges as grounds for its contention that the judgment should be in its favor, first, that there was a total variance between the allegations of the complaint and the proof; second, that there was no evidence of negligence on the part of defendant, and third, that contributory negligence was conclusively proved.

1. The claim of a variance rests upon the argument that the complaint alleges only wilful and wanton negligence, while the proof, conceding it to show negligence, does not bear out the charge of wilfulness or wantonness. We regard the pleading as sufficiently alleging both "wilful" and "ordinary" negligence, and hold that the point has no merit.

2. Was there evidence of negligence on the part of defendant sufficient to make a jury question? This being an appeal from the judgment without a motion for new trial, if there is any evidence reason-

ably tending to show that the accident could have been prevented by the exercise of ordinary care, defendant cannot prevail. The question is not free from doubt, but an examination of the entire record leads us to the conclusion that there was evidence from which the jury might find that the accident could have been avoided, if the engineer had sounded a sharp warning whistle as the train neared the crossing. We do not decide that there was negligence in the speed at which the train was propelled, or that the train could have been stopped in time to have prevented the accident, or that a slowing down after the danger was perceived was either practicable or would have been effective. But if the engineer knew or ought to have appreciated that plaintiff's intestate or his companions might be run down by the rapidly-approaching engine unless warned of the danger, it would seem as though it was the duty of the engineer to promptly give such a warning. It is admitted that the engineer saw the three children playing on the track for a mile or more before the crossing was reached. The usual whistle for the station was given when the train was about half a mile from the crossing. As to whether any whistle was given after this and before the crossing was reached, the evidence was in conflict, and we think the jury was justified in finding that no such whistle was sounded. The two boys who were the companions of deceased heard the whistle that was admittedly sounded, and it is clear from their actions, as well as their testimony, that they knew the train was approaching. Without much doubt the deceased also was aware of the train's approach. The ringing of bell or sounding of whistle was therefore unnecessary to inform them that the train was coming. But it does not follow that a special and distinctive warning whistle when the engine was near the crossing would not have sent the boys, including deceased, flying to places of safety. The chief claim of defendant in this regard is that the engineer saw Henry's companions cross the track and go some distance from it, and saw Henry retire to a station five or six feet east from the track, the argument being that all were in places of safety, and that the engineer could not anticipate that deceased would dart across the track in front of the moving engine. But it does not occur to us that a seven year old boy is in a very safe position five or six feet away

from a track on which a passenger train is speeding by. And the evidence is not conclusive that he was not much nearer, or that he was intent on the train. The engineer had his train under control, and was watching every movement of the boys. He had seen the other boys cross the track, and Henry remain behind. It was quite natural that the child should follow his companions. It may be that the engineer did everything within his power to avoid striking any of the children whom he saw playing on the crossing, and we are inclined to this belief. But the jury thought otherwise, and there was evidence upon which its decision might be based. We are unable to say, as a matter of law, that the engineer ought not to have appreciated the danger, or that he ought not, in the exercise of the caution that the situation demanded, to have sounded a warning of the danger. We do not place our decision on the ground of any wilful or wanton act or omission on the part of the engineer. It is simply that there was evidence that tended to show a failure to exercise ordinary care to avoid the accident, after discovering the peril. This would constitute wilful negligence, so called, under our decisions, but it also constitutes ordinary negligence. There was no wilfulness or wantonness in any sense that imports a reckless disregard of the lives of others. Nor is it wilful negligence in the sense that contributory negligence would not be a defense, as the last act in the tragedy was that of the boy in darting in front of the engine in his attempt to join his companions.

But the engineer was intent on watching the actions of plaintiff and his two companions. Plaintiff was a mere child standing close to the track if not actually on it. Who could say what he would do in the emergency? The case is not altogether unlike one where the engineer observes a horse, cow or sheep on or near the track, and does not endeavor to frighten it away by giving the signals required at a crossing. Palmer v. St. Paul & Duluth R. Co. 38 Minn. 415, 38 N. W. 100; Hohl v. Chicago, M. & St. P. Ry. Co. 61 Minn. 321, 63 N. W. 742, 52 Am. St. 598. It would seem that children of tender years should be entitled to at least equal consideration. Strutzel v. St. Paul City Ry. Co. 47 Minn. 543, 50 N. W. 690; Gray v. St. Paul City Ry. Co. 87 Minn. 280, 91 N. W. 1106; Pickell v.

St. Paul City Ry. Co. 120 Minn. 340, 139 N. W. 616; Bottoms v. Seaboard & Roanoke R. Co. 25 L.R.A. 784, note.

2. The question whether deceased was guilty of contributory negligence was submitted to the jury, and in our opinion it ought not to be held as a matter of law that this child of seven was guilty of negligence that caused or contributed to his death. Pickell v. St. Paul City Ry. Co. supra.

Judgment affirmed.